UNITED STATES of America,
Appellee,

v.

Thomas A. GUEST,
Defendant-Appellant.

No. 74–1301.

United States Court of Appeals,
First Circuit.

Argued March 4, 1975.

Decided May 7, 1975.

Joseph C. Delcore, Everett, Mass., with whom Alfred Paul Farese, Everett, Mass., was on brief, for appellant.

Michael A. Collora, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., and Richard E. Bachman, Asst. U. S. Atty., Chief, Crim. Div., Boston, Mass., were on brief, for appellee.

Before COFFIN, Chief Judge, McEN-TEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

This is an appeal from a judgment of conviction following a jury verdict. Defendant was prosecuted for receiving merchandise, methaqualone, after importation into this country without customs inspection and declaration, knowing of such illegal importation, in violation of 18 U.S.C. §§ 2 and 545.

Four issues are raised. The first two concern one Laird, who received the contraband from a source in Montreal, and, while driving to Boston to deliver it, was apprehended by customs officials at the Maine border. He then cooperated with the officials in the implementation of the original plan. On arriving in the Boston area, at about 1:30 a. m., he made a telephone call to a number given him by his Montreal source. He described the car he was driving and said that it was parked in a certain Holiday Inn with the keys in the ash tray. When defendant arrived at 5:30 a. m., entered Laird's vehicle and began to drive away, he was arrested by customs officials, who also seized 94 plastic bags containing methaqualone capsules.

Defendant charges first that it was error to admit parts of Laird's two out-of-court conversations with his source, one LeGros. Since LeGros was the initiator of Laird's involvement as driver in the transaction, Laird's intent and specific objective in making his trip necessarily involved such understanding as he received from LeGros. The district court properly admitted testimony of conversations with LeGros, not to prove the truth of what was asserted or to bind appellant, but to show the basis on which the witness Laird had acted. VI Wigmore on Evidence § 1766, pp. 177–80; § 1772, pp. 191–92 (3d Ed.). Most of the conversations related to the purpose of the trip (not, according to Laird, the carrying of drugs), discussions as to a proper vehicle, instructions on getting to Boston, three phone numbers Laird could call, and instructions to wait for the car to be returned. It is difficult to see how Laird could describe his actions without referring to what LeGros had told him.

Defendant concedes that a hearsay objection would not lie to this, but argues that some comments were highly prejudicial and could not realistically be isolated in the jurors' minds from defendant himself.[1] One such comment attributed to the absent LeGros was that such a trip had been "done several times before and no one has ever got caught"; the other was "they were waiting for the stuff". As to the latter declaration, specific objection was made and overruled. While this might disturb us if little else connected defendant with this scheme, the facts are that the telephone number Laird called in Boston was listed under defendant's name and that defendant was the person to pick up the car and its contraband early the next morning. This evidence could not but blot out whatever effect the earlier statement had.

---

1. Defendant cites United States v. Caldwell, 466 F.2d 611 (9th Cir. 1973), which we read to say not that the out-of-court statements were improperly admitted, with a limiting instruc-tion, but that the jury obviously ignored the instruction, there being no other evidence on the issue.

█ The statement that this venture had been "done several times before", though not associating defendant with the past efforts, might arguably implicate him. But no specific objection, which would have given the court the chance to ponder the possibility of prejudice, was made. *Cf.* United States v. Hopkinson, 492 F.2d 1041, 1043 (1st Cir.), cert. denied 417 U.S. 968, 94 S.Ct. 3171, 41 L.Ed.2d 1139 (1974). This was not plain error, nor in light of the remaining evidence can we discern any likelihood that defendant could have been prejudiced.

██ The second alleged error involving Laird's testimony is somewhat difficult to understand. It is asserted that the court should not only have excluded the statements of the party whom Laird telephoned on his arrival near Boston, but should also have prevented Laird from stating what he had said. The only possible basis for objection which we see is the representation in defendant's brief that Laird's testimony "had the effect of divulging to the jury what the other party said in response." But, again, any such effect pales against the fact that defendant (who himself testified to receiving a call) showed up to drive off the vehicle. As to defendant's motion for acquittal, we have reviewed the evidence and find it, with the inferences legitimately to be drawn therefrom, to be sufficient to support the verdict.

Finally, defendant takes issue with a portion of the charge which stated that if the jury believed the government witnesses it could draw the inference that defendant took possession of the car and its merchandise with the requisite knowledge and intent; that it could not draw such inference if it disbelieved those witnesses or believed the defendant; and that "it comes down in the last analysis to your assessment of the credibility of the witnesses." Moreover, after the charge was given, a bench conference

was held in which government counsel admirably suggested that a prior recent opinion of ours had criticized the kind of instruction which the court had given on a statutory presumption of knowledge from mere possession. The court then gave a supplementary instruction, revoking its remarks on the presumption from possession, but reiterating that the jury could draw the inference of knowledge if it believed the government witnesses.

██ Defendant admits that no "concise objection" was made to these instructions, but asserts that he did "allude" to it. Our eyes are not so sharp as to see even an allusion to this point after the principal instructions. And nothing was said at all after the supplementary instructions. Consequently we look only for plain error or a defect affecting a substantial right. F.R.Crim.Proc. 52(b). Dichner v. United States, 348 F.2d 167 (1st Cir. 1965); United States v. Foster, 469 F.2d 1 (1st Cir. 1972). Defendant cites only cases from the Fifth Circuit[2] which, in its decision in United States v. Womack, 454 F.2d 1337 (1972), specifically announced that the kind of comparability of credibility charge upheld in United States v. Blue, 430 F.2d 1286 (5th Cir. 1970), would no longer be countenanced in that circuit.

█ These cases all involved a more constant harping on the theme of comparative credibility of government and defense witnesses than was contained in the charge in the case at bar. In United States v. Oquendo, 490 F.2d 161 (5th Cir. 1974), for example, the judge stated that if the comparative credibility issue was resolved against the defendant "there is no doubt that the man ought to be convicted". In this case, the court indicated only that acceptance of the testimony of the government witnesses would support inferences of knowledge and intent sufficient to convict. Moreover, we read the Fifth Circuit doctrine at its broadest as one based on supervisory power rather than on a finding of error. United

**2.** United States v. Oquendo, 490 F.2d 161 (1974); United States v. Williams, 473 F.2d 507 (1973); United States v. Lowry, 456 F.2d 341 (1972); United States v. Dillon, 446 F.2d 598 (1971); and United States v. Garza, 426 F.2d 949 (1970).

States v. Allende, 486 F.2d 1351, 1354 n. 9 (9th Cir. 1973). We have not had the unhappy experience of that circuit on this issue and find neither plain error nor cause to invoke our supervisory power. Nevertheless, we add a word of caution. To discuss credibility specifically in terms of choosing between government witnesses and a defendant's is, as Judge Gee wrote in his concurrence in United States v. Oquendo, *supra* n. 2, 490 F.2d at 166, to invite "the jury to treat the matter of proof as a fair fight between the United States and [defendant] rather than as one weighted in his favor by the reasonable doubt rule." We think the course of prudence is to omit this kind of parallel treatment of credibility in a court's instructions. In this case we have no hesitation in saying that the instructions as a whole were exemplary and that no prejudice was likely.

Affirmed.